## Lewis *v.* Bayliss.

### (*Jackson.*　May 23, 1891.)

1. CHANCERY COURT. *Jurisdiction to convert absolute deed into mortgage upon parol evidence.*

   Chancery Courts have undoubted jurisdiction to convert an absolute deed into a mortgage, if it is made to appear satisfactorily, even by parol evidence, that such was the real transaction between the parties. This jurisdiction has been too long entertained to be now questioned. Its foundation is fraud.

2. SAME. *Same. Degree of proof required.*

   But to justify decree converting an absolute deed into a mortgage, the proof must be very clear and convincing, leaving no reasonable doubt as to the real character of the transaction.

   Cases cited and approved: Lane *v.* Dickerson, 10 Yer., 373; Nickson *v.* Toney, 3 Head, 655.

3. SAME. *Same. Proof must show agreement was made at or before vesting of title.*

   And the proof must show that the agreement that the vendee under an absolute deed should hold the title as a mere security, was made antecedent to or contemporaneously with the conveyance vesting him with title.

4. SAME. *Same. Proof of agreement with vendee.*

   Such agreement may be proved by the subsequent admissions of the vendee and the circumstances of the transaction, without the aid of direct evidence thereof.

Lewis *v.* Bayliss.

5. SAME. *Same. Case in judgment.*
   Under the proof in this case, fully set out in the opinion, the Court holds an absolute deed to be and have the effect of a mortgage.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

F. T. EDMONDSON and GANTT & PATTERSON for Lewis.

J. M. GREER, R. D. JORDAN, S. P. SYKES, and A. H. DOUGLASS for Bayliss.

LURTON, J. This is a bill by the heirs at law of Mrs. Sallie W. Lewis against the heirs at law of Bronson Bayliss to recover the title to a tract of about forty-five acres of land in the suburbs of Memphis, upon the ground that the deeds under which Bronson Bayliss held were in fact intended as mortgages. The prayer is that they be permitted to redeem, or that the land be sold, the debt secured paid, and surplus paid over to them.

The title under which Mr. Bayliss held this property was:

(1) A deed executed May 6, 1879, by one E. McCarty.

(2) A deed of relinquishment executed by G. M. Lewis and wife May 12, 1879.

This latter deed recites that the property had been sold for United States direct taxes in 1864 as the property of G. M. Lewis; that McCarty had brought an action of ejectment against Lewis, and recovered a judgment; and that after this judgment Bayliss had purchased McCarty's title for $1,000, taking deed.

(3) That the same land had been sold for State, county, and city taxes, assessed against Lewis and wife, and redeemed by Bayliss at an expense of $539; that Lewis and wife were indebted to the vendee, by note made in 1877, for $2,000, with interest. The deed concludes: "That in consideration of the foregoing, and the sum of ten dollars to them in hand paid, have deemed it proper, and do hereby, release, renounce, and give up all claim to the said tract of land unto the said Bayliss, his heirs and assigns, and do hereby agree that they, the said Gilly M. and Sarah W. Lewis, have no claim to or upon the said tract of land, and do hereby confirm the title to the said tract; * * * and it is hereby declared that from this day the said Bayliss is under no trust or obligation to the said G. M. Lewis and wife, Sarah W., as to the said tract of land or its proceeds." The deed then recites, in substance, that should the said Bayliss sell said land, "the said Bayliss will, however, if he thinks proper, as a mere gratuity, not being bound to do so, should

he sell said tract of land for enough to re-imburse him the said sum of $1,000 and interest, $539 and interest, and $2,000 and interest, and all other proper charges and outlays in regard to said tract of land, including fees and taxes, when he is so repaid and re-imbursed, let said Lewis and wife have any surplus, should there be any."

The vendee in the above singular instrument never sold this land, and died intestate in 1883. Complainants insist that the said. intestate took the deed from McCarty and the relinquishment above recited as a mere security.

The proof in support of this contention is remarkably strong and convincing. It has been urged that there is no direct proof of an agreement made before or at the time the title was vested in Bayliss that he should hold the property as a mere security. Of course such an agreement must be antecedent to or contemporaneous with the conveyance. The evidence that there was such an agreement may, however, consist of admissions subsequently made by the creditor and in circumstances connected with the transaction itself.

The proof that this was intended and accepted as a mere mortgage is found:

*First.*—In the very extraordinary character of the deed of relinquishment, particularly in the closing recital that the vendee "will, if he thinks proper, as a mere gratuity, not being bound to do so, should he sell said tract of land for enough to re-imburse him the said sum of $1,000 and in-

terest, and $539 and interest, and $2,000 and interest, and all other proper charges, etc., * * * let said Lewis and wife have any surplus, should there be any."

*Second.*—In the entire absence of any direct statement that the indebtedness above set out was paid and discharged by this conveyance.

*Third.*—In the fact that Lewis and wife remained in possession after these deeds for from one to two years, taking the rents and profits without accounting for same.

*Fourth.*—When they went out of possession and Bayliss 'went in, it is most clearly shown that it was under an' agreement that Bayliss should apply the rents and profits in reduction of the debts named in the deed.

*Fifth.*—In admissions distinctly proven after Bayliss thus took possession that the property was only held as a security, and was the property of Lewis.

*Sixth.*—In proof that the payment of $1,000 to McCarty was the result of an adjustment and compromise pending a motion for a new trial, and brought about at the instance of Lewis and agreed to by the attorney in fact for McCarty because the original owner was thereby to be benefited.

*Seventh.*—The taxes due city, county, and State, with costs and penalties, amounted to a sum over three times the amount paid in extinguishment; and this reduction was granted to Lewis and wife

upon their own petition and urgent intercession with the authorities.

A very able argument has been made by counsel for defendants against the policy of permitting a deed to be thus affected by parol evidence, and upon the necessity of clear and cogent evidence if at all admissible.

Whatever doubt may once have been entertained as to the power of a Court of Equity to thus convert a deed into a mortgage by parol testimony, the jurisdiction has been too long entertained to be now questioned. The ground upon which it is stated to rest is that of fraud. "It would be," says Professor Pomeroy, "a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title which had been intentionally given him, and which he had knowingly accepted, merely as a security and therefore in reality as a mortgage." 3 Pomeroy on Eq. Juris., Sec. 1196; Jones on Mortgages, Secs. 321 to 328.

It is unnecessary that the conveyance should have been made by the debtor. It is sufficient that he has an interest in the property. If he procures a conveyance to be made by the one holding the title, upon an agreement that the title is to be held as a security, he will have the right to redeem. Jones on Mortgages, Sec. 331. To convert such a deed into a mortgage, the proof must be very clear, leaving no reasonable doubt as to the real character of the transaction. *Lane*

v. *Dickerson*, 10 Yer., 373; *Nickson* v. *Toney*, 3 Head, 655. The proof in this case is of that character.

Affirm the decree. Appellants will pay costs of appeal.